UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>         Plaintiff,<br><br>v.<br><br>JOSEPH FREEDMAN CO., INC,<br><br>         Defendant. | Case No. 3:22-cv-30047<br><br><br><br>April 19, 2022 |

**CONSENT DECREE**

WHEREAS, Joseph Freedman Co., Inc. ("Freedman") operates a scrap metal processing facility at 115 Stevens Street, Springfield, Massachusetts (the "Facility");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that Freedman has discharged industrial stormwater contaminated with lead, zinc, aluminum, iron, copper, chemical oxygen demand, and total suspended solids from the facility through the City of Springfield's municipal separate storm sewer system into Poor Brook, a tributary of the Chicopee River, without complying with the federal Multi-Sector General Permit issued by the United States Environmental Protection Agency ("MSGP"), in violation of the Federal Clean Water Act, 33 U.S.C. §1331(a), *et seq.* (the "Clean Water Act" or "the Act");

WHEREAS, on February 16, 2021, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against Freedman ("Notice") to the Administrator of the United States Environmental Protection Agency ("EPA");

1

the Administrator of EPA Region 1; the Massachusetts Department of Environmental Protection; and to Freedman, pursuant to Section 505 of the Federal Clean Water Act, 33 U.S.C. §1365;

WHEREAS, Freedman has eliminated all stormwater discharges flowing down the ramp located on the southern edge of the Facility;

WHEREAS, Freedman disputes the allegations raised by the Commonwealth and believes that it has valid defenses to those allegations;

WHEREAS, today the Attorney General filed a complaint against Freedman in the United States District Court, District of Massachusetts;

WHEREAS, the Commonwealth and Freedman (collectively, the "Parties") have reached an agreement to resolve the litigation; and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issues of fact or law, it is ADJUDGED, ORDERED, AND DECREED, as follows:

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1).

2. The Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

### III. EFFECTIVE DATE

3.     The effective date of this Consent Decree shall be when the Court enters the Consent Decree on the docket ("Effective Date").

### IV. PARTIES BOUND

4.     This Consent Decree shall constitute a binding agreement between the Parties, and Freedman consents to its entry as a final judgment by the Court and waives all rights of appeal upon its entry on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of either party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the Parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and Freedman agree otherwise in writing within fourteen (14) days of the Court's decision.

5.     The provisions of this Consent Decree shall apply to and bind Freedman and any person or entity acting by, for, or through Freedman, including Freedman's managers, directors, officers, supervisors, employees, agents, servants, attorneys-in-fact, successors, and assigns, and those persons in active concert or participation with Freedman who receive notice of this Consent Decree.

6.     Freedman shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. Freedman shall also provide a copy of this Consent Decree to any contractor retained by it to perform work required under this Consent Decree and shall condition any such contract, entered into after the Effective Date of the Consent Decree, on

the contractor's performance of the work in compliance with the terms of this Consent Decree. For any such contract entered into prior to the Effective Date, Freedman shall ensure that the contractor performs its work in compliance with the terms of this Consent Decree.

7. For three (3) years following the Effective Date, Freedman shall provide written notice of any prospective change or transfer in ownership of its business, together with a copy of the proposed written change or transfer agreement, to the Attorney General in accordance with Section XIII (Notices) of this Consent Decree. At least thirty (30) days prior to any such change or transfer of ownership, management, or operation of the Facility that occurs within three (3) years of the Effective Date, Freedman shall provide a copy of this Consent Decree to the proposed transferee or new manager or operator. No change or transfer in ownership, management, or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the Defendant or its managers, officers, directors, agents, successors, assigns, heirs, and/or servants of any obligation under this Consent Decree, unless:

    a. the transferee agrees, in writing, to undertake any outstanding obligations required by Section V (Payments), Section VI (Injunctive Relief), and Section VII (Facility Access and Submission of Records) and to be added as a Defendant or substituted for the Defendant as a Party under the Consent Decree and thus assume the obligations, rights, and benefits of, and be bound by, its terms;

    b. the Commonwealth agrees to consent, in writing, to relieve the Defendant of its obligations under the Consent Decree; and

    c. the transferee becomes a party under this Consent Decree pursuant to Section XV (Modification).

Any attempt to change or transfer ownership, management, or operation of the Facility without complying with this paragraph shall constitute a violation of this Consent Decree.

8.  Freedman shall not violate this Consent Decree, and Freedman shall not allow its officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, Freedman shall not raise as a defense the failure by any of Freedman's managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

9.  In addition to any relief specifically provided in this Consent Decree, Freedman understands and agrees that violations of this Consent Decree may by punishable by contempt pursuant to an appropriate civil contempt proceeding.

## V. PAYMENTS

10. Within fifteen (15) days of the Effective Date, Freedman shall pay to Neighbor to Neighbor the sum of one hundred and fifteen thousand dollars ($115,000) to fund projects to benefit the Chicopee River watershed and to address the health inequities and environmental injustice that the historically marginalized and overburdened communities in Springfield continue to face. Evidence of Freedman's payment to Neighbor to Neighbor shall be contemporaneously provided by Freedman to the Commonwealth pursuant to Section XIII (Notices). Payments should be made by wire transfer referencing this action to the following account:

Neighbor to Neighbor Mass Education Fund



11.     Within five (5) days of the Effective Date, Freedman shall reimburse the Attorney General's Office in the amount of fifty thousand dollars ($50,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payments should be made by wire transfer referencing this action to the following account:

Commonwealth of Massachusetts, Office of Attorney General



Reference: EPD, Commonwealth v. Freedman – Costs

### VI. INJUCTIVE RELIEF

12.     Freedman agrees to operate the Facility in compliance with the applicable requirements of the currently applicable MSGP, including any amendments thereto or reissuances thereof, and with the Federal Clean Water Act.

13.     <u>Stormwater Discharges Associated with Industrial Activity</u>

   a.  *Additional Pollutant Reduction Measures*. Freedman will direct and control Stormwater Discharges Associated with Industrial Activity at the Facility to minimize pollutants "to the extent achievable using control measures (including best management practices) that are technologically available and economically practicable and achievable in light of best industry practice"

Pursuant to MSGP Section 2.0. Freedman will take the following actions by the following dates:

i. Within forty-five (45) days of the Effective Date, Freedman shall provide the Attorney General's Office with a final plan showing the drainage improvements, including additional paving, to be made at the Facility ("Final Drainage Improvements Plan"). The Final Drainage Improvements Plan shall be consistent with the preliminary plan titled "Preliminary Drainage Improvements Plan" a copy of which is attached as Exhibit A.

ii. Within forty-five (45) days of the Effective Date, Freedman shall provide the Attorney General's Office with a final plan showing the stormwater treatment system to be constructed at the Facility ("Final Stormwater Treatment Plan"). The Final Stormwater Treatment Plan shall be consistent with the preliminary plan titled "Preliminary Stormwater Treatment Plan" a copy of which is attached as Exhibit B.

iii. Within six (6) months of the Effective Date, Freedman shall complete implementation of the Final Drainage Improvements Plan and the Final Stormwater Treatment Plan.

iv. Within fifteen (15) days of the Effective Date, Freedman shall amend its Notice of Intent to be covered by the Stormwater Permit to include coverage under Sector P as a co-located industrial activity.

v. By the Effective Date, Freedman shall eliminate all Stormwater Discharges Associated with Industrial Activity from the Facility that

      do not flow through an Outfall properly identified and described in Freedman's Notice of Intent and SWPPP; and

   vi. By the Effective Date, Freedman shall control Stormwater Discharges Associated with Industrial Activity through the Outfalls identified and described in Freedman's Notice of Intent and SWPPP. *See* MSGP Section 2.

 b. *Monitoring.* Per the MSGP, Freedman, through its consultant GZA Environmental, or another similarly-qualified environmental consultant, shall monitor Stormwater Discharges Associated with Industrial Activity through the Outfalls identified and described in Freedman's Notice of Intent and SWPPP. *See* MSGP Section 4. All reporting of monitoring results shall be certified by an authorized person as set forth in Section G of Appendix M of the 2021 Stormwater Permit. In addition to the permit requirements, Freedman through its consultant GZA Environmental, or another similarly-qualified environmental consultant, shall prepare video recordings of the sampling events for the first quarter after the Effective Date at both Outfall 001 and Outfall 002 and shall provide the Attorney General's Office with copies of such video recordings in accordance with Section XIII (Notices), below. The video recordings shall include an accurate record of the time and date on which they were recorded. Each video shall make clear and evident, through visual imagery:

    (a) the date and time on which it was recorded,

    (b) the location or locations at which it was recorded,

8

    (c)  the persons present during the sampling,

    (d)  the location of the pipe or conduit being sampled from,

    (e)  the manner in which each sample is taken, and

    (f)  the sample or samples taken.

If the video imagery is insufficient to verify items (a)-(f) above, then the Attorney General's Office will have the right to be present during or require the video recording of another representative sampling event in a subsequent calendar quarter of its choosing.

## VII. FACILITY ACCESS AND SUBMISSION OF RECORDS

  14.  Freedman shall permit the Attorney General's Office to visit the Facility during normal daylight business hours for three (3) years following the Effective Date, provided that the Attorney General's Office provide at least twenty-four (24) hours of prior notice. During any site visit, the Attorney General's Office shall have access to and permission to copy any documentation required to be kept on site by the MSGP and may collect samples and take photos at the Facility.

  15.  For a period of three (3) years following the Effective Date, Freedman shall provide the Attorney General's Office with the following documents in accordance with Section XIII (Notices), below:

    a.  copies of all documents Freedman submits to EPA, the Commonwealth, and/or the City of Springfield concerning Freedman's stormwater controls or the quality of Freedman's Stormwater Discharges Associated with Industrial Activity, including but not limited to all documents and reports submitted as required by the MSGP. Such documents and reports shall be

        sent to the Attorney General's Office on the same day that they are submitted to the governmental entity;

   b.   all maintenance records for the Facility's stormwater pollution control systems. Maintenance records will be provided within ten (10) business days of Freedman's receipt of a written request by the Attorney General's Office;

   c.   written notice of any changes made to any of Freedman's stormwater control measures that are described in the SWPPP pursuant to MSGP 6.2.4, within two (2) weeks of completion;

   d.   written notice of any changes made to Freedman's stormwater control measures pursuant to MSGP Section 6.3, within two (2) weeks of completion;

   e.   current copies of Freedman's SWPPP within three (3) business days of a request by the Attorney General's Office; and

   f.   laboratory reports and analytical results of stormwater sampling performed by or for Freedman within ten (10) business days of receiving the reports.

16.   Any information provided by Freedman may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

17.   The Consent Decree in no way limits or affects any right of entry and inspection or any right to obtain information held by the Commonwealth or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Freedman to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VIII. INTERESTS AND COLLECTIONS

18.     If any payment required pursuant to this Consent Decree is late or not made, Freedman shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) per annum computed monthly and shall pay all expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorney fees.

## IX. EFFECT OF CONSENT DECREE

19.     Upon compliance by Freedman with the requirements of this Consent Decree, (a) this Consent Decree shall resolve Freedman's liability for the specific legal claims alleged against it in the Complaint, and (b) the Commonwealth shall release Freedman from liability for the specific legal claims alleged against it in the Complaint. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all the statutes and regulations referred to in this Consent Decree, whether related to the specific legal claims resolved by the Consent Decree or otherwise.

20.     Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by Freedman, or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by the Massachusetts Department of Environmental Protection or EPA relative to the Facility.

21.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Freedman is responsible for achieving and maintaining

complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Freedman's compliance with this Consent Decree shall not be a defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Freedman's compliance with any aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

22. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Decree.

## XII. MISCELLANEOUS

23. Freedman understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that Freedman may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

24. Freedman shall pay all expenses, including reasonable attorney fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree against it.

25. Nothing in this Consent Decree shall prevent Freedman from taking any action otherwise required by law.

26. The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the parties.

27. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business on the next Business Day.

28. Freedman is responsible for complying with this Consent Decree and is liable for violations of this Consent Decree.

29. Signature of the parties transmitted by scanning and email are binding.

### XIII. NOTICES

30. Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

>For the Attorney General's Office and the Commonwealth:
>
>Emily K. Mitchell, Attorney
>Environmental Protection Division
>Office of the Attorney General
>One Ashburton Place, 18th Floor
>Boston, MA 02108
>Emily.Mitchell@mass.gov
>
>For Freedman:
>
>Lee D. Hoffman, Attorney
>Pullman & Comley LLC
>90 State House Square
>Hartford, CT, 06103
>lhoffman@pullman.com
>
>John Freedman
>President
>Joseph Freedman Co., Inc.
>115 Stevens Street
>Springfield, MA, 01104
>jf@jfrecycle.com

or, to such other place or to the attention of such other individual as a party may from time to time designate by written notice to the other parties to this Consent Decree.

### XIV. INTEGRATION

31. Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the parties and represents the complete and exclusive statement of

the parties with respect to the terms of the settled agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between parties shall have no force and effect.

## XV. MODIFICATION

32.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph. Minor modifications of the preliminary plans attached hereto shall not constitute a material change for purposes of this paragraph.

## XVI. AUTHORITY OF SIGNATORY

33.     The person signing this Consent Decree on behalf of Freedman acknowledges: (a) that they have personally read and understand each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that they are authorized to sign and bind Freedman to the terms of this Consent Decree, and (c) that, to the extent necessary, Freedman's managers, directors, officers, and shareholders have consented to Freedman entering this Consent Decree and to its entry as a Final Judgment.

## XVII. RETENTION OF JURISDICTION

34.     The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVIII. FINAL JUDGMENT

35. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

OFFICE OF THE ATTORNEY GENERAL
MAURA HEALEY, ATTORNEY GENERAL

By: *E. Mitchell* (signature)

Emily K. Mitchell
Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
617-963-2207
Emily.Mitchell@mass.gov

Dated: April 19, 2022

JOSEPH FREEDMAN CO., INC.

By: *John Freedman* (signature)

John Freedman, President
Joseph Freedman Co., Inc.
115 Stevens Street
Springfield, MA 01104

Dated: April 18, 2022

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

*Katherine Robertson*, United States Magistrate Judge

United States District Court

Dated: June 13, 2022

15